UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : |
| | :  Criminal No.  3:24-CR-0009 |
| DAVEY JOHNATHAN SISK | : |
| | : |

## UNITED STATES' SENTENCING MEMORANDUM

Over the course of several months, the defendant, Davey Johnathan Sisk (Sisk), conspired with an ex-girlfriend, Anna Layher (Layher), to exploit and sexually abuse two young children under Layher's care. Sisk repeatedly and relentlessly demanded that Layher produce graphic child sexual abuse material (CSAM)—both videos and images—depicting MV2 and MV3 (then six and three years old) and send it to Sisk as part of their twisted romantic relationship. Layher complied with Sisk's demands and sent him numerous CSAM videos and images of the victims.

But Sisk's exploitation did not stop there. He actively sought out CSAM from other sources online, including MV1 (then fourteen years old), to whom he sent payment in exchange for CSAM videos depicting MV1. Sisk's predatory role in exploiting and abusing children over an extended period warrants a serious and lengthy sentence. Sisk's conduct was calculated, premeditated, and involved a nine-month sexual abuse campaign against vulnerable, young children. For the reasons discussed below, the United States recommends that the Court sentence Sisk to 480 months (40 years) imprisonment and a lifetime of supervised release.

I.   FACTUAL BACKGROUND

In June 2023, Sisk and Layher began communicating on Telegram, a cloud-based encrypted messaging application that is used for all varieties of nefarious criminal activity,

1

including child sexual abuse and exploitation.[1] ECF No. 50, Presentence Investigation Report (PSR) ¶ 6. But these messages were not their first contact. Sisk and Layher had known each other for several years and had been romantically involved. *Id*. ¶ 27. Sisk also knew the two young children under Layher's care, MV2 and MV3, who were then ages six and three. *Id*. ¶ 7. Between June 2023 and February 2024, Sisk and Layher exchanged approximately 28,000 Telegram messages, often hundreds a day. *See* Govt Exhibit A attached hereto, Affidavit of Charles J. Moloney (Moloney Aff.) ¶ 5. While they spoke about many things, their conversations regularly came back to one topic: Sisk's desire for CSAM depicting the two minor children, MV2 and MV3.

The sheer volume and detailed content of their abhorrent Telegram messages is staggering. During the approximately nine months that they corresponded on Telegram, Sisk repeatedly and relentlessly demanded that Layher create and send CSAM to him involving these young children. *See* Govt Exhibit B attached hereto, Excerpts of Telegram Messages.[2] Sisk demanded images and videos. *See, e.g.,* Ex. B, USAO_005853 (Sisk: "And ur her [redacted][3] make he be still and do it; Now Anna; Pillow over her head and do it all the way and I want good videos and pictures."). He demanded that Layher create and send photographs of MV2 and MV3's nude genitalia. *See, e.g., id*. (Sisk: "I want up close pictures and videos"); ECF No. 39, Statement of Facts (SOF) ¶ 8 (Sisk: "Pictures video" … "Pictures video" … "Pictures like I told u"); SOF ¶ 7 ("SISK repeatedly requested that Layher send SISK sexually explicit pictures and videos of MV2 and work with MV2

---

[1] *See, e.g.,* "How Telegram Became a Playground for Criminals, Extremists and Terrorists," New York Times, available at https://www.nytimes.com/2024/09/07/technology/telegram-crime-terrorism.html (last accessed October 1, 2024).
[2] In the excerpted Telegram messages, Sisk's username is "Lilly Smoot", *see* SOF ¶ 15, Ex. A ¶ 4, and Layher's username is "Anna Morrow," Ex. A ¶ 4. These messages were extracted from Layher's cellular device when law enforcement executed a federal search warrant at her residence in February 2024. Ex. A ¶¶ 1-4. Telegram messages are cited herein by their Bates number.
[3] The redacted text is a descriptor of the victim's relationship to Layher and is not included to protect the privacy and identities of the victim.

2

to 'take' a sex toy."); PSR ¶¶ 34-35. Sisk demanded that Layher have sexual contact with both children and send him video evidence. *See, e.g.,* PSR ¶¶ 10, 34-35; SOF ¶¶ 5, 8, 10; Ex. B, USAO_006542 (Sisk: "Suck him"… "And put him in u" … "He won't even know"). Sisk demanded that Layher force MV2 and MV3 to have sexual contact with each other. *See, e.g.,* Ex. B, USAO_006537-6539; PSR ¶ 34. He repeatedly demanded that Layher attempt to insert a sex toy, or dildo, into MV2 (a six-year-old child) and send him videos. *See, e.g.,* SOF ¶¶ 10-11; Ex. B, USAO_007073. Sisk made this last demand in connection with his desire to himself penetrate and have direct sexual contact with MV2—which he discussed with Layher on numerous occasions. *See, e.g.*, Ex. B USAO_007073-7074; USAO_006992 (Sisk: "She won't even let u she not going to let me"); USAO_006371 (Sisk: "U think she suck me till I nut?"; Layher: "Yes"; Sisk: "U need to train her; So she know what is going on"); USAO_007073-74 (Sisk: "Use the dildo; Lube; Tell her I am going to do that tomorrow night"); PSR ¶ 35.

Three of the CSAM videos Sisk demanded—depicting MV2 and MV3—are described in detail in the Statement of Facts and PSR and will separately be provided to the Court in advance of sentencing. SOF ¶¶ 6, 9, 11; PSR ¶ 11, 14, 16; Govt Exs. 1–3 (provided separately to the Court). One video depicts Layher attempting to insert MV3's penis into Layher's vagina. SOF ¶ 6. In another video, Layher directs MV2, while nude, to touch her toes and then zooms the camera in on MV2's genitalia and anus. *Id*. ¶ 9. And in yet another video, a female hands a glove and orange sex toy (dildo) to MV2 and MV2 then inserts it into MV2's genitalia. *Id*. ¶ 11. These videos represent, however, only a small fraction of the disturbing and heinous CSAM that Sisk demanded from Layher during this period.

And, sadly, Layher acquiesced to Sisk's perverse demands. She repeatedly abused and exploited children under her care, captured images and videos of that abuse, and sent it to Sisk.

3

While Layher's own conduct is reprehensible and indefensible, a review of the Telegram messages she exchanged with Sisk over this period offers some insight as to her motivation: she was desperate to maintain a romantic relationship with Sisk. Ex. B, USAO_006370 (Layher: "Can you care about me pls"; Sisk: "Then do as I say"). Sisk, keenly aware of this dynamic, took advantage of Layher at every turn and used her feelings for him and desire for his attention as his primary leverage point in manipulating Layher to acquiesce to his demands and send him CSAM of the two children. *See, e.g.*, Ex. B, USAO_006802 (Layher: "I am not doing that to her understand baby like I love you to death I really do but I'm not doing the trauma that happened to me too her"); USAO_006802 (Sisk: "I'll duck u if y fuck her"); USAO_007069 (Sisk: "Fuck her; I want to see her pussy; I want to hear her scream"; Layher: "Come back and I will!"; Sisk: "Do it and I'll come over tomorrow; And I'll stay the night"). And Sisk used Layher's compliance with his prior demands to obtain more abusive material, repeatedly threatening to disclose the videos and pictures Layher had already sent him if she did not continue to comply with his relentless and heinous demands. *See, e.g.*, Ex. B, USAO_005852 (Sisk: "Now anna grace;[4] Or I'll show everyone the other videos and pictures; I'll be waiting").

And Sisk's manipulative and perverse behavior did not stop there. He also sought out CSAM from other sources online, including MV1. As the PSR and Statement of Facts detail, between 2022 and 2023, Sisk purchased CSAM online from MV1, who was then fourteen years old. PSR ¶¶ 23-26; SOF ¶¶ 12-14. He paid MV1 through Cash App—approximately $465 total—and, in exchange, received CSAM through Snapchat. *Id*. Law enforcement later identified approximately twelve CSAM videos depicting MV1 in Sisk's Snapchat account, including videos in which MV1 fully exposes and touches her genitals, like the one described in the Statement of

---

[4] "Anna Grace" is Layher's first and middle name.

4

Facts and PSR.  SOF ¶ 13; PSR ¶¶ 25-26; Govt Ex. 4 (provided separately to the Court).  On yet another occasion in late 2022, Sisk communicated with another Snapchat user to purchase CSAM and repeatedly demanded that the CSAM include "cp rape."[5]  PSR ¶¶ 36-37.  Law enforcement identified a video in Sisk's Snapchat connected to this purchase, which depicted an adult male repeatedly penetrating a minor female.  PSR ¶ 37.  Sisk's predatory behavior, thus, extended to another minor victim (MV1) and other unidentified victims, whom he sought out online.

## II.    PROCEDURAL BACKGROUND

On March 27, 2024, a grand jury in the Western District of Virginia returned a superseding indictment charging Sisk with eight counts: one count of conspiring to sexually exploit a child in violation of 18 U.S.C. § 2251(a), (e); six counts of sexual exploitation and attempted sexual exploitation of a child in violation of 18 U.S.C. § 2251(a), (e); and one count of receiving child pornography in violation of 18 U.S.C. § 2252A.(a)(2), (b).  ECF No. 24.  On June 17, 2024, Sisk pled guilty to Counts 3, 7, and 8 of the Superseding Indictment.  ECF No. 40, Plea Agreement.  As part of the plea agreement, Sisk admitted to the facts contained in the Statement of Facts, signed by all parties.  ECF No. 39, SOF.  The plea, entered under Federal Rule of Criminal Procedure 11(c)(1)(C), stipulates that Sisk should be sentenced to a term of imprisonment between 240 and 480 months (20 – 40 years).  ECF No. 38, Plea Agreement.

## III.    SENTENCING GUIDELINES

Sisk's total offense level is 43 and he is in criminal history category I.  PSR ¶¶ 77, 82.[6]  As the parties and Probation agree, the 2023 Guidelines Manual applies.  Plea Agreement at 4;

---

[5] Given the nature of their exchange, "cp" likely stands for child porn.
[6] The Government calculates Sisk's total offense level as 48, but because 43 is the highest offense level recognized by the guidelines, anything higher than 43 is considered 43 for purposes of the guidelines.  USSG Ch. 5 cmt. n.2.  Probation agrees with this assessment.  PSR ¶ 77.

PSR ¶ 44. This results in a guideline range of life imprisonment. PSR ¶ 105. Sexual exploitation of a child carries a mandatory minimum sentence of fifteen (15) years in custody and maximum term of imprisonment of thirty (30) years. 18 U.S.C. § 2251(a), (e); PSR ¶ 104. Receiving child pornography carries a mandatory minimum sentence of five (5) years and a maximum term of imprisonment of twenty (20) years. 18 U.S.C. § 2252A(a)(2), (b); PSR ¶ 104. Thus, the statutory maximum for the three offenses Sisk has pled guilty to is eighty (80) years. The stipulated range in Sisk's Rule 11(c)(1)(C) plea agreement is lower than both his guidelines and the statutory maximum—240 to 480 months (20–40 years)—but it appropriately contemplates multiple decades of imprisonment. The United States believes a sentence of 40 years fairly reflects the abhorrent nature of these crimes, as detailed below.

## IV.   ARGUMENT

In determining Sisk's sentence, the Court must consider the Section 3553(a) factors to arrive at a reasonable sentence: one sufficient but not greater than necessary to satisfy federal sentencing goals. 18 U.S.C. § 3553(a). The Court must consider, among other things, the nature and circumstances of the offense, history and characteristics of the defendant, the need for the sentence imposed, and the kinds of sentences available and applicable sentencing range. *Id*. Here, those factors support a sentence of 480 months (40 years)—the top end of the stipulated range. This sentence properly accounts for Sisk's criminal conduct and his repeated and deliberate sexual exploitation of minor victims. The recommended sentence is lengthy, but it is also no harsher than necessary to accomplish federal sentencing goals.

### A. **Sisk's repeated and relentless exploitation of children as young as three years old requires a severe sentence.**

The nature and circumstances of Sisk's criminal conduct justifies a severe sentence in this case. This is not a case involving the simple possession of CSAM, which is illegal and concerning

on its own. This case is far worse; it involves disturbing, coercive, and manipulative conduct resulting in the extended, sexual exploitation of young children by their caregiver at Sisk's direction. The horrific and disturbing nature of Sisk's criminal conduct cannot be overstated. As detailed above, Sisk deliberately and repeatedly demanded that Layher create and send him CSAM depicting two young children under her care. *See* Ex. B; SOF ¶¶ 2-11; PSR ¶¶ 6-35. In their Telegram messages, Sisk frequently described exactly how he wanted Layher to abuse and exploit these young, indefensible victims. *See id*. When Layher expressed hesitation, Sisk threatened to either withhold his affection from her, or to expose her to law enforcement. *See, e.g.,* Ex. B. Sisk's calculated manipulation of Layher further aggravates his criminal conduct.

Critically, the child exploitation counts that Sisk has pled guilty to were not isolated incidences. Rather, they are but two representative examples of the demands Sisk made to Layher over the course of several months and the CSAM that she created and sent to him at his behest. The Telegram messages that Sisk and Layher exchanged evidence just how relentless—and heinous—his demands were. *See, e.g.,* Ex. B generally; Ex. B, USAO_005853 (Sisk: "Pillow over her head and do it all the way and I want good videos and pictures"; "Sisk "I want up close pictures and videos"); USAO_007070 (Sisk: "I'll be waiting for the video and pictures"); ECF No. 39, Statement of Facts (SOF) ¶ 8 (Sisk: "Pictures video" … "Pictures video" … "Pictures like I told u"); SOF ¶ 7 ("SISK repeatedly requested that Layher send SISK sexually explicit pictures and videos of MV2 and work with MV2 to 'take' a sex toy.").

The age of Sisk's victims further underscores the gravity of his criminal conduct: his two primary victims, MV2 and MV3, were just six and three years old at the time of this abuse. And they were not anonymous victims. Sisk had previously dated Layher and had interacted with the children under her care on several occasions. PSR ¶¶ 7, 27; SOF ¶ 2. Sisk knew these young

7

children and had spent time with them. Nevertheless, Sisk engaged in perverse and manipulative behavior to sexually exploit them, likely inflicting irreparable harm. His other victim, MV1, while a teenager, was still young (14 years old). PSR ¶ 23. Moreover, that Sisk sought out CSAM from multiple sources, including from several online accounts and directly from his ex-girlfriend, further highlights the seriousness of his offense conduct and his willingness to sexually abuse both those he knew and did not know.

As the evidence shows, over the course of several years, Sisk preyed on multiple victims through a variety of means. There are no mitigating circumstances for Sisk's calculated and deliberate actions to sexually exploit children and his criminal conduct requires a severe sanction and lengthy sentence.

B. **Nothing in Sisk's background justifies a more lenient sentence.**

Sisk's history and characteristics do not counsel a different result. As the PSR reflects, notwithstanding his criminal conduct in this case, Sisk has lived a relatively normal life. There is no history of sexual abuse or other abuse in his background. *See generally* PSR. Sisk has not been diagnosed or treated for any psychological disorders and he has no history of substance abuse. PSR ¶¶ 90-92. He likewise has no criminal history, aside from two traffic-related offenses. PSR ¶¶ 78-81. Sisk graduated from high school and attended the police academy to train as a corrections officer and worked as a corrections officer for a period. PSR ¶¶ 93-94, 98. He has maintained relatively consistent employment since his graduation. PSR ¶¶ 95-101. He married and had a child. PSR ¶ 88. Despite Sisk's relatively uneventful childhood and entry into adulthood, Sisk sought out and targeted young children to exploit for his own perverse sexual gratification. While there are undoubtedly some sad facts in his background—including the drug-

related deaths of his parents, loss of other family members in short succession, and separation from his wife, PSR ¶¶ 86-88—they do not excuse Sisk's behavior or justify a more lenient sentence.

C. **A lengthy sentence is necessary to reflect the seriousness of Sisk's criminal conduct.**

In this case, a lengthy prison sentence is necessary to reflect the seriousness of Sisk's criminal conduct and achieve other federal sentencing goals. The Government's recommended sentence of 480 months serves two important purposes in particular: (1) it will protect the public from further crimes of the defendant for decades; and (2) it serves as a stark deterrent to those considering sexually exploiting children.

First, the PSR and Statement of Facts reveal that Sisk has a deeply rooted predilection for CSAM. As discussed above, Sisk sought out CSAM from a variety of sources over several years: he demanded that Layher create and send him CSAM of the two children under her care; purchased CSAM from MV1 through Cash App and Snapchat; and requested "cp rape" from another Snapchat user. His deliberate and relentless quest for CSAM over this period indicates that he has a high propensity to seek out such content and sexually exploit children in the future, if given the opportunity. The evidence also supports the conclusion that Sisk was a hands-on offender and sexually abused MV2. *See, e.g.,* Ex. B, USAO_006371 (Sisk: "U think she suck me till I nut?"; Layher: "Yes"; Sisk: "U need to train her; So she know what is going on"); USAO_007073-74 (Sisk: "Use the dildo; Lube; Tell her I am going to do that tomorrow night").[7] This dramatically increases the danger that Sisk poses. He is not just directing the production of CSAM and viewing it, he is also sexually abusing children himself. A forty-year prison term will ensure that Sisk is not a danger to the public—most critically very young children—for a long time.

---

[7] *See also* Govt Ex. 5 (provided separately to the Court), drawings produced by MV2.

9

A forty-year sentence also serves as a stark deterrent to anyone who may consider sexually exploiting or abusing children. Forty years is a lengthy period of incarceration—it constitutes almost half a lifetime. But, as discussed herein, such a sentence is merited. It sends an important message: this Court and this community will not abide by abusers exploiting the most vulnerable among us and will punish those criminal actors harshly. Imposing this sentence in this case—and similar sentences in similar cases—will deter criminal actors that may consider engaging in similar conduct. This is especially important in the context of child exploitation cases given that CSAM is so readily available on cellphones and other personal electronic devices.

In sum, the recommended sentence appropriately reflects the seriousness of Sisk's offense conduct, promotes respect for the law, provides just punishment for his criminal actions, provides necessary deterrence, and will protect the public from Sisk.

D. **The Government's recommend sentence aligns with the sentencing guidelines.**

As discussed above, Sisk's guidelines range for these counts is life imprisonment and the statutory maximum is eighty years. The stipulated range in Sisk's Rule 11(c)(1)(C) plea agreement is lower than both, 240 to 480 months, as is the sentence the Government asks the Court to impose, 480 months. Sisk is ineligible for probation, USSG § 5B1.1(b)(1), PSR ¶ 114, and there are no other pertinent policy statements from the Sentencing Commission that inform this analysis. In sum, the Government's recommended sentence aligns with the sentencing guidelines

E. **A 480-month sentence will not result in unwarranted sentencing disparities.**

A 480-month sentence is appropriate in this case considering the heinous nature of Sisk's child exploitation and sexual abuse. This sentence will not result in unwarranted sentencing disparities and compares favorably with similar cases from within the Fourth Circuit. The Government acknowledges that its requested sentence is longer than the average and median sentences imposed for defendants falling into the same final offense level and criminal history

category. *See* PSR at 31. It is not, however, significantly longer. *Id.* (noting the average sentence was 348 months and the median sentence was 360 months). And, importantly, those median and average numbers are just that: numbers without context. They do not account for the type of CSAM produced, age of the victims, or other relevant conduct. Moreover, the Government's recommended sentence—480 months (40 years)—is *half* the statutory max (80 years) and guidelines range (life, which is effectively 80 years considering the statutory max). If the Court imposes a 480-month sentence that will itself result in a substantial downward variance in favor of the defendant.

Such a sentence is also appropriate considering the outcome in Layher's federal case. At the same time that Sisk was charged in the Western District of Virginia, his coconspirator, Layher, was charged in the Eastern District of Virginia with child exploitation offenses. *United States v. Anna Layher*, Case No. 1:24-cr-52 (E.D. Va. 2024).[8] Those charges arose directly from her conduct described in the PSR involving Sisk, MV2, and MV3. *United States v. Anna Layher*, Case No. 1:24-cr-52 (E.D. Va. 2024); PSR ¶ 39. Like Sisk, Layher pled guilty to two counts of sexual exploitation of a child (MV2 and MV3) in violation of 18 U.S.C. § 2251(a). Plea Agreement, ECF No. 26, *United States v. Anna Layher*, Case No. 1:24-cr-52 (E.D. Va. May 2, 2024); PSR ¶ 39. On September 5, 2024, Judge Patricia T. Giles sentenced Layher to twenty years on each count to run consecutive (40 years total) and a lifetime of supervised release. Judgment, ECF No. 43, *United States v. Anna Layher*, Case No. 1:24-cr-52 (E.D. Va. Sept. 5, 2024); PSR ¶ 114. Layher's case, which involved the same conduct and criminal actors with similar culpability, provides the most apposite data point in considering potential sentencing disparities. It would be a grave injustice

---

[8] Layher was charged in the Eastern District of Virginia (EDVA), in part, because her criminal conduct mainly occurred at her residence, which is located within EDVA.

11

for Sisk to receive less time than Layher for the same charges, considering that Layher produced CSAM at Sisk's insistence and direction, and the communications demonstrate that Sisk manipulated Layher to achieve his ends: the repeated sexual abuse of the two children for his sexual gratification. And, in addition, Sisk's criminal activity did not stop with MV2 and MV3. Sisk also victimized and sexually exploited other minors, including MV1.

As another example, in *United States v. Blankenship*, Judge Jones sentenced the defendant to 50 years imprisonment following his conviction on seventeen counts of sexually exploiting two minor victims in violation of 18 U.S.C. § 2251(a). Case No. 1:21-cr-00036, Judgment, ECF No. 42 (W.D. Va. Dec. 20, 2021). While Blankenship's counts of conviction are more numerous than in this case, the deliberate and relentless nature of Blankenship's exploitation activities bears many similarities to Sisk's and provides a reasonable comparison for the Court's consideration. *See United States v. Blankenship*, Case No. 1:21-cr-00036, Govt's Sent. Mem., ECF No. 35 (W.D. Va. Dec. 14, 2021).

In addition, in recent years, the Fourth Circuit has repeatedly affirmed district court decisions sentencing child exploitation offenders to sentences longer than what the Government seeks here. *See, e.g., United States v. Mills*, 850 F.3d 693, 696 (4th Cir. 2017) (affirming judgment sentencing defendant to 45 years imprisonment following conviction on one count of sexually exploiting a child); *United States v. Hoover*, 95 F.4th 763, 770 (4th Cir. 2024) (affirming judgment sentencing defendant to 70 years imprisonment following conviction on two counts of sexually exploiting a child and one count of possessing child pornography); *United States v. McCroskey*, No. 23-4364, 2024 WL 1596670, at *1 (4th Cir. Apr. 12, 2024) (affirming judgment sentencing defendant to 80 years imprisonment following conviction on eight counts of sexually exploiting a child and three counts of possessing child pornography).

The 40-year sentence the Government seeks here would not result in unwarranted sentencing disparities. Rather, it would ensure the Sisk is punished commensurately with Layher, it would result in a sentence that is appropriate on the facts of this case, and it would compare favorably with similar child exploitation cases from within the Fourth Circuit.

### F. Restitution is statutorily required.

Restitution is statutorily required and the United States asks that the Court impose restitution to the victims under 18 U.S.C. § 2259. *See also* PSR ¶¶ 119-20. As of this writing, the Government has not received any restitution requests from the victims despite contact with the victims' parents/guardians.

### V. WITNESS DISCLOSURE

The Government anticipates calling SA Charles J. Moloney to testify at sentencing.

### CONCLUSION

For these reasons, the Government respectfully requests that the Court sentence Sisk to 480 months (40 years) imprisonment (240 months on Count 3 and Count 7 to run consecutive, and 60 months on Count 8 to run concurrent with Count 7), and a lifetime of supervised release; order that Sisk pay the mandatory special assessment, as well as restitution to the victims; and order that Sisk register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. §§ 16901-970.

Respectfully submitted,

**CHRISTOPHER R. KAVANAUGH**

United States Attorney

<u>*/s/ Sally J. Sullivan*</u>
Sally J. Sullivan (D.C. Bar No. 1021930)
Assistant United States Attorney
United States Attorney's Office
Western District of Virginia
255 West Main St., Suite 130
Charlottesville, Virginia 22902
(434) 284-9569
sally.sullivan@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on October 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification to counsel for the defendant.

*/s/ Sally J. Sullivan*
Assistant United States Attorney